Lemonious v. Barr May it please the court. My name is Renee Redmond. I represent petitioner Andre Lemonious who is detained by ICE at Franklin County Correctional Facility in Massachusetts. Mr. Lemonious was born out of wedlock and it is our position that he became a U.S. citizen when his mother naturalized. He was 17 years old and he turned 18 about six months later. It does not matter under Section 320 and under this court's case, Collard v. Sessions, that he was incarcerated at the time in New York State Prison under a youthful offender adjudication. So as I mentioned, this court about a year ago issued an opinion in an almost identical case named Collard v. Sessions. In that case, the child was also 17 years old when his father naturalized. At the time, he was being held in federal pretrial detention. About a month later, he turned 18 when he was moved to adult custody and he was later tried and convicted. Your Honor, I would say that this case is not meaningfully distinguishable from Collard because Collard did go through, he found the statute ambiguous and then it went through the statutory context, the legislative history, and rules of statutory construction to find that the temporary physical separation from his father did not mean his father's custody was terminated. It then went on and noted that the board's interpretation, which had been that the child had to actually reside with the father at the time of naturalization, was at odds with the actual custody that was at issue in that case. Judge Redmond, in that decision, Judge Droney, in his opinion, specifically put aside this exact situation. He said there may be different reasons why someone who's adjudicated guilty would not fall under this definition. And then in the concurrence by Judges Hall and Jacobs, two judges, they emphasized that the result obtained here is only because the detention was pre-trial, brief, and in a juvenile proceeding, and ended by saying the whole thing in this case is surprising enough and does not lend itself to expansion. So the three distinguishing features was pre-trial, brief, and in a juvenile facility. Here, it was not pre-trial, right? No, it was not, Your Honor. It was not brief. Your client was in jail for almost three years, five months between the naturalization date and his 18th birthday, right? Exactly. And it was in an adult facility, right? Yes. So all three factual, unique, distinguishing features, maybe not unique, but distinguishing features from Khalid are all absent here, right? They are absent, but I do not think that those are the distinguishing factors that Judge Droney was looking at because he cited to an unpublished Ninth Circuit case in which in that case, the court was looking at the prior law and determining whether legal custody had been terminated. And in that case, the juvenile court had terminated the parent's custody and control of the child. It was a juvenile court order. It had been terminated, and it was an issue of legal issue. No, but why wasn't custody transferred here in this case when he was put in the custody of New York State during incarceration? Your Honor, because no court has ever considered or even certainly has not ordered that his mother has lost custody of her child. Simply because he was sent to prison does not mean under Section 320 that she lost physical custody of her child. That deals with legal custody, physical custody. Under what definition of physical custody would you say that someone who is in an adult jail who's sentenced is in the physical custody of the parent? What definition of physical custody would you rely on? New York defines physical custody as the physical care and supervision of a child, right? Isn't that New York's definition? Yes. So that doesn't apply, right? And federal law, the Uniform Child Custody Jurisdiction Enforcement Act defines it the exact same way. So isn't it undisputed that your client was not in the physical care and supervision of the mother? Your Honor, I would go back to Khaled. Because in that case, the child also was not living with his father. He was not physically with his father and the court acknowledged that. But it went back to the purpose of the statute. It went back to the fact that it was temporary and it was a juvenile facility where the parents were encouraged to have an unusual amount of supervision, right? Wasn't that the case? Yes, it's in the statute, Your Honor. Right. But again, those features aren't present here, right? Let me give you this hypothetical. Okay. Suppose you have a 17-year-old commits a murder who is part of a gang, right? Mm-hmm. It's sentenced to 25 years in jail. Mm-hmm. And is 17. Under your position, that person, even though they're 17 years old, they're in an adult facility, would become a U.S. citizen even though they weren't with their parent when they were 17. They're not going to be with their parent for 25 years. Upon serving that 25-year sentence, they would become a U.S. citizen, right? Isn't that your position? It's not exactly my position because here we're only talking— How would that be different? Because here—two reasons. First of all, because we're talking about the six months between the period when his mother naturalized and when he actually became 18, but also we're talking about the fact that he was incarcerated pursuant to a youthful offender adjudication. And simply because the New York— In federal court, you have juveniles who are under juvenile detention who are 17. The hypothetical I gave you could happen under federal law. Someone is a juvenile under federal law, right, and ultimately gets transferred to adult status, gets a 25-year sentence, and under your scenario, your position, would get citizenship. I believe he would, Your Honor. Yes, I believe he would. And especially here because the youthful offender statutes that were in effect at the time didn't explicitly provide for the parental involvement that is provided in the federal juvenile system. But that doesn't mean that New York State didn't encourage that involvement. The youthful offender provisions are there because they're for children. And they're there so that children are found to have been not convicted. And we provided several examples in our briefing in which it makes it clear that New York State encourages parents to remain involved with their children even though they— —spoke persuasively about the vagaries of parole, release date, and that shouldn't determine something as substantial as citizenship. He could have been released earlier. And he would have been in his mother's physical custody. But he wasn't because a magistrate or a parole board decided not to release him earlier. But they don't have the power to confer citizenship. Exactly, Your Honor. And as Khaled noted, that would mean that citizenship would be a status that's casually conferred. And citizenship is precious, as this Court has recognized. It should not be casually— For example, you could have a family court situation involving a juvenile in this type of situation where a family court judge could award legal and or physical custody to one parent, right? Yes, of course, Your Honor. Isn't that judge in that situation deciding citizenship essentially? Your Honor, that's a different case than this case. That's a judge who's deciding citizenship by ruling on who gets custody, right? Yes, it is. But here we're talking about— who indirectly then is deciding citizenship. Because here it would be a judge who is deciding on issues that aren't relevant to custody of the parent. In other words, whether somebody should be detained before trial, whether somebody should be sentenced, how they should be sentenced, or whether they should be released. None of those issues are relevant to whether somebody is eligible for citizenship under 320, which operates as a matter of law. Because Congress has used the term physical custody, right? You just want to eliminate the idea of physical custody from this statute. Under your position, physical custody would mean nothing. Any juvenile in any type of custody would, I think under your position, get citizenship, right? No matter what jail they're in. Your Honor, I think that's probably true. Because under Khaled, that's essentially what the court said, is that the Congress was ambiguous and didn't separate out physical custody. Khaled said this is as far as we can go, and we can go no further. So that's not what Khaled said. Khaled didn't suggest this broad expansion that you're suggesting to this court. Anything else, of course, is dicta. Anything beside what they decided. I know that's true, but Khaled doesn't provide support for this, because that's essentially what I'm saying. It is dicta, but I don't think it provides any support for this situation. I see I'm over my time. You've reserved three minutes. Thank you. We'll hear from the government. Good morning. May it please the Court, I'm Virginia Gordon for the Respondent. Your Honors, Mr. Lemonius did not remain in the physical custody of his mother because he was serving an adult sentence in an adult facility and his detention was not like the detention in Khaled, which was brief and temporary and involved pretrial juvenile detention. And as the Court has recognized, Khaled was very clear in stating that it was not addressing the very situation that we have here where an individual was adjudicated guilty and was serving a sentence upon a conviction. He was a youthful offender, Mr. Lemonius, wasn't he? Yes, he was a youthful offender, and we recognize that that is not a conviction in New York State, but it does follow from criminal adult proceedings in adult criminal court for adult criminal offenses and results in an adult sentence held in adult facilities. Although a short sentence, and it could have been even shorter if the parole board or anyone else decided that this was enough for a young offender. The way the youthful offender statute prescribed a conviction under the offenses that Mr. Lemonius was adjudicated for, it was for a Class E felony, which had a maximum term of four years, but could be one to three, and he was sentenced to the one to three years, so it wasn't as indeterminate. And I think as the Court was pointing out, the timeline here is also quite different. We're not in the pretrial situation. We're in an adjudication of guilt, a finding that an offense happened, and a sentence in an adult facility, which removed the physical custody from his mother because the physical custody, the care and control, which colleagues— He was under 18. He was in one of his parents' custody. He never knew his father, so he was in his mother's custody, wasn't he? At the time he was arrested, he had been in his mother's physical custody. He was 18 in person. Wasn't he still in his mother's custody? We would argue that he was not in his mother's physical custody because he was in an adult facility where the Department of Correction and Community Services makes clear that they're responsible for the care and control of the child. And in Khalid, Khalid talked about who was responsible for the care and control, and in the federal pretrial juvenile detention, because of the way the statute was written, Mr. Khalid's father was involved in his daily care and control. The statute encouraged that, and the statute worked to facilitate that by making sure juveniles are detained near their families or in communities close or even in their home if they can be, which they couldn't in that case. And that case was a much shorter timeline, where Mr. Khalid was arrested in July 2011, put in pretrial detention. His father was naturalized in August of 2011. He turned 18 in September 2011, all before any criminal proceeding or determination of guilt. So it's a much shorter time frame. And so when Khalid talks about a brief temporary separation, that minute two-month period is much shorter than the three years where Mr. Lamonius was not in his mother's custody. In fact, he'd been in this adult detention facility for one year before his mother naturalized, and then nearly six months until his 18th birthday, and then continued for a year and a half until his sentence was complete. So it doesn't have the same nature of a brief temporary separation. But that then turns over the question of citizenship to the parole board, to the magistrate who sentenced him, and to people other than the federal government, which is the conferring agency for citizenship. Isn't that correct? Yes, Your Honor. And respectfully, we don't think that it does turn over that citizenship decision because the statute is clear on how the sentence has to be made. So since the statute provides that decision where in the federal pretrial it is up to the magistrate who decides with the person before him or her whether to give those sentences. But in the youthful offender adjudication, it's decided for them by the legislature. And the choice to engage in a criminal act was not the judge's choice and it was not the New York State legislature's choice. But the conviction that is presented for one of those offenses, that was the choice. But it doesn't decide citizenship because the physical custody, Congress said it has to be physical custody. When that physical custody was transferred to the Department of Correction and Community Services, and the mother did not have any involvement in the daily care and control, that took away her physical custody, which then is Congress's statement of what is required for citizenship. And so under our reading of Khalid, we see that Khalid created a narrow exception to this physical custody requirement saying that this brief temporary separation under pretrial juvenile detention would not remove the care and control of the parent. But here in this situation where we have an adult sentence in adult facilities where the care and control of the child is led by the Department of Corrections and not by the parent, we do believe that he was not in his mother's physical custody. And if the court has no further questions, then I will conclude. And thank you for your time. Thank you. Constable, you're served three minutes for rebuttal. Thank you, Jenna. First of all, I would just like to point out that the temporary period that counsel refers to when Khalid was in pretrial detention was a month simply because he just turned 18 a month or so after his father naturalized. He was later tried in he wasn't tried, he pled guilty and was convicted of material support for terrorism and sentenced to an adult sentence. But he became a citizen in between those. Yes, he was. Well, he became a citizen when his father naturalized, Your Honor, because it operates as a matter of law. And that is really a much more egregious set of facts in terms of the alleged offense he committed. He was giving aid to terrorists who wanted to harm this country.  Yes, Your Honor. And I think that points out the fact that Section 320 does operate as a matter of law. There's no discretion. There's no oath of allegiance. It doesn't matter who's been arrested. That is what Congress has put into place. And regardless of what horrible things people have done, and Mr. Monius was not convicted of material support for terrorism, he is a U.S. citizen as a matter of law. Thank you very much. Do you have any case in the history of New York State or any federal case where someone who is in jail has been found to be in the physical custody of a parent? No, Your Honor. I don't. I don't know of any cases. I'm talking about even in the family law context under New York law. I am unaware of any. And the only case that I know of that's on point in the whole country is Khaled. All right. Thank you. Thank you, guys. Thank you both.